Green J.
delivered the opinion of the court.
This is an action of replevin for some bogs, levied on by the defendant, Harrison, as deputy sheriff, as the property o Lewis <5. Allen. On the trial, Allen, the defendant, in the execution, was introduced as a witness, who proved that the^ hogs were the produce of a parcel that had been levied on, as the property of the witness in 1845, and were then sold to Park, the plaintiff, (with the consent of the plaintiff in that execution) by the witness.
The bogs had remained in his, (witness) possession, and had been kept, and attended to by witness, for Park, for which Park was to pay him.
The witness proved a variety of facts, as to the produce of *413 these hogs; the amount of pork Park had received from them, and the quantity the witness had retained, the purchase of corn by Park to feed the hogs: his payment for the rent of land, advance of money to the witness &c. Several witnesses were introduced by the defendants, the object of which was, to attack the credibility of Allen, by proving statements made by him, different from those made in Ms evidence and other circumstances at variance with his evidence. No exception is here taken to any part of the charge of the court, but the paragraph in which his honor said: “If Allen was found in possession of the property in controversy, the law presumes him the owner, but that presumption would of course yield to sufficient proof, and any proof would be sufficient if it produced belief in the minds of the jury that the title was in another.”
The jury found for the defendants. The plaintiff moved for a new trial, upon the affidavit of Wyley B. White, a deputy sheriff, who states; that he was ordered to obtain a juror in place of one who had been rejected; he was about to go out into the crowd to look for a juryman, and had turned round for that purpose, when Harrison, one of the defendants, attracted his attention, and pointed him to James 0. Ervin, who sat near, and he summoned Ervin as a juror. He had not observed Ervin until he was pointed out to him, but if he had observed him, he would as soon have summoned him as a juror without having him pointed out as with it.
The plaintiff made affidavit, that when he instructed his counsel not to object to Ervin as a juror, he was not apprized of the manner in which he had been summoned.
The court refused a new trial, and the plaintiff appealed to this court.
1. The first question is, can this court, acting upon its established rule in such cases, grant anew trial on the facts of the case. And this we think cannot be done.
*414 In tbe first place, the witness is in a suspicious position. To release his property from Bonley’s execution in 1845, he sold three hogs to the plaintiff with Bonley’s consent, who paid Bonley the value of the hogs, and left them in Allen’s possession. There seems to have been no definite agreement as to the terms upon which Allen was to keep the hogs for Park. Nor has there been any adjustment of his compensation. Park bought some corn, but it does not appear to have been kept separate from Allen’s corn, and to have been used, only for feeding the hogs. Of the pork that was made, although Park. got a considerable quantity, yet Allen put up for himself considerable quantities. It is difficult to avoid the suspicion, from Allen’s own proof that there was a secret trust for his benefit, at the time Park first bought the hogs. Add to this the discrepancies which the defendant’s witnesses prove, and we cau-ri ot say that the jury acted rashly in believing that a secret trust, for the benefit of Allen, existed in the original contract about the hogs.
2. Did the court err in that paragraph of the instruction to the jury now objected to? We think his Honor stated the law correctly.
3. Should a new trial have been granted on the affidavit? The whole facts stated by the deputy sheriff satisfy us, that there was no intention on the part of the defendant Harrison, to influence improperly the selection of a jury. Only one juror was needed, and seeing the sheriff about to go out, he indicated the presence of Ervin, merely to save time, and inadvertently, himself being a deputy sheriff and on familiar terms with the officer. It is clear also, that any supposed wish of Harrison, had no influence with the officer, for he states, that if he had seen Ervin, he would as soon have summoned him without being pointed out as with it. Upon the whole, we think there is no error in this record, and affirm the judgment.